**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**JONESBORO DIVISION**

SAIDAH D. YOUNG                                                                           PLAINTIFF

v.                                              NO. 3:06CV00129JLH

MICHAEL J. ASTRUE, Commissioner,
Social Security Administration[1]                                                         DEFENDANT

## OPINION AND ORDER

Saidah Young brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review

of a final decision of the Commissioner of the Social Security Administration denying her claims

for disability insurance benefits under Title II of the Social Security Act, and  supplemental security

income benefits under Title XVI of the Act.  Both parties have submitted briefs, and the case is ready

for disposition.

## I.

Young applied for disability insurance benefits on April 19, 2002, and for supplemental

security income benefits on February 13, 2002, alleging that she became disabled on October 19,

2001, due to irregular heart rate, fatigue, shortness of breath and hypertension. (Tr. 17-18.)  After

her applications were denied initially and upon reconsideration, Young requested a hearing before

the Administrative Law Judge.  The hearing was held on September 21, 2005.  (Tr. 52-80.)  Young,

who was represented by counsel, and her daughter, Kalifa Young, testified.

On December 20, 2005, the ALJ issued a decision finding that Young was not disabled.  (Tr.

14-22.)  Young appealed her case to the Appeals Council.  (Tr. 12.)  On May 25, 2006, the Appeals

---

[1] Michael J. Astrue was sworn in as Commissioner of the Social Security on February 12,
2007.  He, therefore, is substituted for Jo Anne B. Barnhart under Fed. R. Civ. P. 25(d)(1).

Council denied Young's request for review.  (Tr. 6-11.)  Therefore, the ALJ's decision became the final decision of the Commissioner from which Young seeks judicial review.

## A.    STANDARD OF REVIEW

Young has the burden of proving her disability by establishing a physical or mental impairment lasting at least one year that prevents her from engaging in any substantial gainful activity.  42 U.S.C. § 1382c(a)(3)(A); *Baker v. Apfel*, 159 F.3d 1140, 1143 (8th Cir. 1998); *Ingram v. Chater*, 107 F.3d 598, 601 (8th Cir. 1997).

The Court's function on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.

> Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.   In determining whether existing evidence is substantial, we consider evidence that detracts from the Commissioner's decision as well as evidence that supports it.  As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because we would have decided the case differently.

*Roberts v. Apfel*, 222 F.3d 466, 468 (8th Cir. 2000) (citations omitted).  In this case, the Court must determine whether the Commissioner's decision that Young is not disabled as of October 19, 2001, is supported by substantial evidence.

## B.    FACTUAL BACKGROUND

Young  was born on March 7, 1952, and was 53 years old at the time of the hearing.  (Tr. 56.) She has a high school education and has had a course in computer programming at a trade school. She began work as a typist for IBM, became a programmer/librarian, and then became an editorial assistant.  (Tr. 57.)  The earnings report shows that her earnings exceeded $35,000 for each of the

four years preceding the year of her alleged onset of disability.  (Tr. 144.)  Young was not asked at
the hearing about the physical demands of any of these jobs.  She has not engaged in substantial
gainful activity since the alleged onset date.

Young was living in Dallas, Texas, when she was admitted to Parkland Health and Hospital
System in December 2001 and diagnosed with shortness of breath, hypertension and congestive heart
failure.  (Tr. 420.)  In March 2002, she was diagnosed with new onset arterial flutter.  (Tr. 423-425.)
During 2002 and 2003, Young's cardiac condition was regularly monitored at Parkland and at Dallas
County Hospital.  (Tr. 421-445.)  At least by July 2002, Young's congestive heart failure and her
hypertension were stable.  (Tr. 190, 246.)  Regular reviews of Young's systems revealed that she did
not suffer from shortness of breath, extreme edema, chest pain, dizziness, or pain.  (Tr. 243, 251,
300.)  Young was directed to continue her medications and report any problems with swelling,
dizziness, or increased shortness of breath.  (Tr. 433, 440, 445.)  According to the medical records,
Young did not report any problems.

At the time of the hearing, Young was living in Proctor, Arkansas.  She was under the care
of Dr. Rahall, a general practitioner at East Arkansas Family Health Center.  (Tr. 65.)  The record
does not say how long she had been under Dr. Rahall's care, nor does the record include any records
from Dr. Rahall or the East Arkansas Family Health Center.  The record does not contain any report
or documentation from any treating physician after June 15, 2004.

At the hearing, Young testified that she worked steadily from approximately 1973 until 2001.
(Tr. 56, 144.)  In 2001, she started developing some medical problems, and because of her shortness
of breath she had difficulty working.  (Tr. 59-60.)  Although Young alleged disability beginning in
October 2001, she testified that since June 2004 she has  worked as an independent contractor with

an internet company doing transcription work over the computer, using headphones.  (Tr. 61.)  She works about 4-1/2 hours per day or 25 hours a week.  She has never made more than $500 a month doing this work.  (Tr. 63.)

Young testified that she is unable to work full-time because she gets tired, which she attributes to her congestive heart failure.  (Tr. 64-65.)  Young testified that she also has a problem with her hip, that the hip problem is separate from the congestive heart failure, and that "it's more worrisome."  (Tr. 67.)  She had a pin put in her hip when she was 14 and, as she has aged, her hip has started to bother her.  (Tr. 68-69.)  She said that the hip burns and stings when she sits, and she has to stand up.  Her physician prescribed Ibuprofen 800 mg. for the pain.  (Tr. 69.)

Young stated that she could only stand and walk about an hour and a half a day, sit about an hour and 15 minutes at a time, and lift less than 10 pounds frequently.  (Tr. 66-67.)  She stated that she could only stand about two minutes at a time before having pain.

Young's daughter, Kalifa O. Young, also testified.  (Tr. 70.)  Kalifa stated that her mother cannot push anything.  Kalifa claimed to do most of the household chores.  Kalifa further testified that her mother basically stays at home.  (Tr. 72.)

Based on the testimony and the record, the ALJ ordered consultative examinations to obtain more information regarding Young's hips and her heart condition.  (Tr. 72.)  Dr. William F. Blankenship, an orthopedist, performed a consultative examination on November 2, 2005.  His letter report stated:

> This individual was seen in the clinic on 11/2/05 for both hips bothering her.  She states actually it is her right hip that causes her difficulty.  This has been worse over the past six months.  In the past she did have some hip pinning at age 14 of the right hip.  She has had no treatment until six months ago.

In the last six months her family doctor has placed her on ibuprofen, which does help. She has never been referred to a specialist.

At present when she works as a transcriptionist, sitting and using a foot pedal, this causes her some discomfort.  She describes this as burning and aching.

The last time she had any treatment was when she saw her family doctor in May of 2005.

Today on examination of this individual, her range of motion is noted on the Range of Motion Chart.

She does walk with a slight limp and uses a cane.

As requested, AP views of both hips were made.  The left hip film reveals the hip cartilage spaces appear to be well-maintained at all levels.  No degenerative changes are seen.  AP of the right hip reveals some narrowing of the hip cartilage space, particularly in the superior aspect of the femoral head acetabular area.  There are three pin fixation devices, in excellent position.  No other pathology is noted.

IMPRESSION:
1.      Pin fixation, left hip.
2.      Degenerative arthritis, left hip.

(Tr. 447-48.)

Dr. Blankenship completed a Range of Motion Chart and a Medical Source Statement of Ability to do Physical Work-Related Activities.  (Tr. 449-453.)  He found that Young had no limitations in lifting or carrying, could stand or walk or do both about six hours in an eight-hour day, and was not limited in pushing, pulling, or sitting.  (Tr. 449-450.) Dr. Blankenship further found that Young could climb, kneel, crouch and stoop occasionally, and balance and crawl frequently.  He found that Young had no restrictions on her ability to reach, handle, finger, and feel.  (Tr. 450-451.)

Dr. Howard J. Chuang, a cardiologist, conducted a consultative examination on November 10, 2005.  (Tr. 458-460.)  He noted that she was taking Ibuprofen, ferrous sulfate, Toprol XL, Accupril, Furosemide, and potassium chloride.  He noted that Young's symptoms were fatigue,

weakness, and inability to concentrate well.  She did not seem to have shortness of breath or chest pain.  (Tr. 458.)  Young told Dr. Chuang that she had congestive heart failure in 2002 with symptoms that included ankle swelling and orthopnea.  On physical examination, Dr. Chuang noted that Young's blood pressure was 144/98, she weighed 310 pounds and was 5'10" tall, she was not in any acute respiratory distress, the chest was clear to auscultation, the first heart sound was normal, and the second heart sound was normal with physiological splitting.  The EKG showed no acute changes.  Dr. Chuang's impression was that Young had hypertension with probably hypertensive cardiovascular disease without acute congestive heart failure.  (Tr. 459.)

Dr. Chuang also completed a Medical Source Statement of Ability to Do Work-Related Activities.  (Tr. 454-457.)  He found Young's ability to lift or carry to be limited to twenty pounds occasionally and ten pounds frequently; her ability to stand and walk to be less than two hours in an eight-hour workday, and her ability to push or pull to be limited in the lower extremities.  He found that Young was not limited in sitting.  He noted that Young was overweight and required a cane to walk.  He said that she could never climb or balance but that she could occasionally kneel, crouch, crawl, and stoop.  (Tr. 455.)  He found Young to be limited in working in environments with temperature extremes, dust, humidity/wetness, hazards including machinery and heights, fumes, odors, chemicals, and gases based on Young's being overweight and her history of congestive heart failure.  (Tr. 457.)

## II.

The ALJ undertook the familiar five-step analysis in determining whether Young was disabled.  The five-step sequential evaluation determines: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe and medically

determinable physical or mental impairment; (3) whether the claimant may be deemed disabled because the impairment meets or equals a listed impairment in Appendix 1 to Subpart P, Title 20, Code of Federal Regulations; (4) whether the claimant is able to return to past relevant work, despite the impairment; and if not (5) whether the claimant can perform any other kind of work. 20 C.F.R. §§ 416.920 and 404.1520. *See Cox v. Barnhart*, 345 F.3d 606, 608 n.1 (8th Cir. 2003).

The ALJ found that Young had not engaged in substantial gainful activity since the onset date. (Tr.18.) He found that Young has ischemic heart disease and essential hypertension, impairments that are "severe" within the meaning of the Regulations, but that she does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 19.)

The ALJ found Young's allegations regarding her limitations not to be totally credible. (Tr. 21.) The ALJ found that Young retained the residual functional capacity to lift/carry ten pounds occasionally and less than ten pounds frequently, and to stand, walk or do both six hours and sit six hours in an eight-hour day. (Tr. 21.) He determined that Young retained the residual functional capacity to perform her past relevant work as a typist/clerk/stenographer. (Tr. 21.) He further determined that Young's ischemic heart disease and essential hypertension did not prevent her from performing her past relevant work. Therefore, the ALJ found that Young was not disabled. (Tr. 22.)

## III.

Young argues that the Commissioner's finding is not supported by substantial evidence. She claims that the ALJ failed to evaluate properly Young's subjective allegations and complaints pursuant to the criteria set forth in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). *Polaski* states requirements that ALJs in the Eighth Circuit must follow. *Randolph v. Barnhart*, 386 F.3d 835, 841

(8th Cir. 2004). The ALJ in this case was based in Tennessee (Tr. 14), which is in the Sixth Circuit. Thus, he was not bound to follow *Polaski*. Nevertheless, the ALJ mentioned and is bound to follow the applicable regulations, which largely mirror *Polaski*. *See* C.F.R. § 404.1529 and § 416.929. The factors that must be considered include the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness and side effects of medication that the claimant takes to alleviate the pain; (5) treatment, other than medication, that the claimant receives to relieve pain or other symptoms; (6) other measures to relief pain; and (7) other factors concerning the claimant's functional limitations due to pain or other symptoms. *See* SSR 96-7P, 1996 WL 374186 at *3 (S.S.A.). "The ALJ is not required to discuss each factor as long as the analytical framework is recognized and considered." *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004). Furthermore, the ALJ may discount subjective complaints if inconsistencies are apparent in the evidence as a whole. *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998). However, "[i]t is not sufficient for the adjudicator to make a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible'." SSR-96-7P, 1996 WL 374186 at *2. Here, the ALJ said only, "[t]he undersigned has considered the claimant's allegations and has found them generally not credible in the light of the objective evidence." (Tr. 20.)

Young further argues that the ALJ did not consider the limitations placed on her by Dr. Chuang. The ALJ gave greater weight to the opinions of Dr. Blankenship than Dr. Chuang, finding Dr. Chuang's opinion on Young's ability to stand and walk to be "too liberal and not corroborated by the rest of the record." (Tr. 21.) Like the finding that Young was not credible, the ALJ's

8

statement here is a mere conclusion unsupported by any explanation, rationale, or citation to the record.

The ALJ found that Dr. Blankenship was more credible than Dr. Chuang, but in doing so he disregarded the internal inconsistencies in Dr. Blankenship's report. Dr. Blankenship's report states that Young's difficulties were greater with her right hip, where she had pins inserted when she was 14 years old. Dr. Blankenship's report also states, "AP of the right hip reveals some narrowing of the hip cartilage space, particularly in the superior aspect of the femoral head acetabular area. There are three pin fixation devices, in excellent position." Thus, both the history as stated by Young to Dr. Blankenship and the x-rays of the right hip showed pins and degenerative changes in the right hip. However, in his diagnosis, Dr. Blankenship never mentioned the right hip. Instead, he said that Young had pins in her left hip, which is inaccurate, and he said that she has degenerative arthritis in her left hip, despite the fact that the text of his report said, "[n]o degenerative changes are seen" in the left hip. Perhaps these inconsistencies are merely scrivener's errors, but the ALJ did not find them to be so. The ALJ made no request of Dr. Blankenship for a clarification, nor did he comment on these inconsistencies in his opinion.

Perhaps of more import is the fact that the ALJ adopted Dr. Blankenship's finding that Young could stand and walk for six hours of an eight-hour day. Neither Dr. Blankenship nor the ALJ explained why it was reasonable to conclude that Young could stand and walk six hours in an eight-hour day when she weighed approximately 300 pounds, had objective evidence of degenerative changes in her right hip, used a cane and walked with a limp and, then, also, had hypertension and cardiovascular disease. Perhaps it is true that Young could stand and walk six hours in an eight-hour day, but neither Dr. Blankenship nor the ALJ explained the basis of that conclusion.

On the face of it, Dr. Chuang's estimate that Young could stand and walk no less than two hours in an eight-hour day seems more logical. The ALJ may well have had good reason for discounting that conclusion, but he did not explain that reason in his opinion. Dr. Chuang took into account Young's obesity, the fact that she uses a cane to help walk, her history of congestive heart failure, and her cardiovascular condition in reaching his conclusion.

Moreover, the ALJ did not develop information regarding the physical demands of Young's past work as required by SSR 82-62. The ALJ characterized her post work as "typist/clerk/stenographer" and said that Young "could return to this occupation as generally performed (SSR 82-61)." (Tr. 20.) Young testified that she started as a typist for IBM approximately two and one-half years after completing high school. She later became a programmer/librarian and still later an editorial assistant. The record does not show that she had been gainfully employed as a typist within 15 years of the adjudication of the claim, nor does the record show what the demands were of the work that she had performed within 15 years of the adjudication of the claim.

It also must be noted that the ALJ did not evaluate Young's obesity, nor did he evaluate the effect of the combination of Young's impairments on her ability to work. According to Dr. Chuang, Young was 5'10" and weighed 310 pounds. Young has a history of pain along with x-ray evidence of arthritis in a weight bearing joint. When Dr. Chuang saw her, her blood pressure was 144/98, even though she was taking Topril XL and Accupril. Moreover, she had a history of congestive heart failure with some indications of vascular congestion. The Commissioner is required to "consider the combined effect of all of the individual's impairments, without regard to whether any such impairment, if considered separately," would be sufficiently severe to be disabling. 42 U.S.C.

10

§ 423(d)(2)(B) (2004).  *See also Bowen v. Sullivan*, 902 F.2d 1292, 1295 (8th Cir. 1990).  Since the case is being remanded, the ALJ should address this issue.

The ALJ failed to obtain any medical records for treatment after June 2004, which would be particularly important in assessing Young's hypertension in light of the fact that Dr. Chuang found her blood pressure to be 144/98 while she was taking Toprol and Accupril.

The ALJ did not offer any explanation for the conclusion that Young was not entitled to a closed period of disability.  Young testified at the September 2005 hearing that her condition had improved, a candid admission of which the ALJ took no note in finding Young not to be credible. The medical records are consistent with Young's testimony inasmuch as they show that her congestive heart failure required much greater medical attention in 2002 and 2003 than in later years, and that she was hospitalized during that time for other reasons in addition to her heart disease.  It may be that Young was not disabled for a period of twelve months, but the issue was not addressed in the ALJ's opinion.

The ALJ has a duty to develop a reasonably complete record.  *Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994).  Here, the ALJ failed to do so.

## CONCLUSION

The Commissioner's administrative decision is reversed, and this case is remanded to the Commissioner for further proceedings consistent with this opinion.  This reversal is pursuant to the fourth sentence of 42 U.S.C. § 405(g).  *See Shalala v. Schaefer*, 509 U.S. 292, 296-97, 113 S. Ct. 2625, 2629, 125 L. Ed. 2d 239 (1993).

IT IS SO ORDERED this 17th day of September, 2007.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE